## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER JONES,** | : | **CIVIL NO. 4:09-CV-887** |
| | : | |
| **Plaintiff,** | : | **(Judge McClure)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **C.O. HASHAGEN, et al.,** | : | |
| | : | |
| **Defendants,** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

This is a civil rights action brought by Christopher Jones, a state inmate, seeking damages and other relief as a result of an alleged Eighth Amendment violation relating to the failure of prison staff to protect Jones from assault by a fellow inmate. With respect to this complaint, the well-pleaded facts are as follows:

On February 5, 2008, the plaintiff, Christopher Jones, was a state inmate housed at the State Correctional Institution (SCI) Dallas. (Complaint ¶ 13.) On February 5, as Jones was leaving his cell and proceeding to the guards' desk, another inmate, Woodrow Mitchell, threw a television set from the top tier of the cell block, striking Jones on the head and rendering him unconscious. (Complaint ¶ 15.)

Inmate Mitchell then re-entered his cell and emerged with hot water which he also threw on Jones as he lay prone on the cell block floor. (Complaint ¶ 16.) Following this second assault, Mitchell retreated to his cell, and recovered another

object which he threw at Jones, striking him on the shoulder and elbow. (Complaint ¶ 17.) Correctional Officers Hashagen and Linhart were on duty in the cell block when this incident occurred, and witnessed the assault. (Complaint ¶¶ 18 and 19.) While the correctional officers did not attempt to physically subdue inmate Mitchell during this assault, they ordered Mitchell into his cell and locked him in the cell. (Complaint ¶¶ 18 and 19.)

Prison officials then responded to the scene, transported Jones to the infirmary and treated his injuries. (Complaint ¶¶ 20, 21.) Jones was later taken to a local hospital where he received additional medical treatment before he was returned to the prison infirmary. (Complaint ¶¶ 21-23). After being treated at the infirmary Jones was released back into general population but was medically confined to his cell until February 12, 2008. (Complaint ¶ 24.). Jones continued to receive treatment for his injuries, in the form of prescription pain relievers, until February 18, 2008. (Complaint ¶ 25.)

Dissatisfied with the prison's response to this incident, Jones submitted a grievance to the prison unit manager, Joseph Semon, on February 12, 2008. (Complaint ¶ 27.) At the time of this incident the administrative remedies for inmate grievances were provided for in Department of Corrections Administrative Directive 804 ("DC-ADM 804").

The Department of Corrections' grievance system was a three-tiered system. Pursuant to DC-ADM 804, the first step in the inmate grievance process is an initial review. An inmate must submit a grievance within 15 working days of the event on which the grievance is based. (DC-ADM 804 (VI)(A)(8).) An inmate who was dissatisfied with the initial review decision is permitted to appeal to the Facility Manager within 10 working days of the date of the initial review decision. (DC-ADM 804(VI)(C)(1)(b).) At a state correctional institution, the Facility Manager was the institution's Superintendent. (DC-ADM 804(IV)(G).) An appeal to final review could be sought through the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") by filing an appeal to that office within 15 working days of the date of the Facility Manager's decision. (DC-ADM 804 (VI)(D)(1)(b).) Extensions to these deadlines could be granted at the discretion of the agency if the inmate submitted a written explanation for a failure to timely file the grievance or an appeal. (DC-ADM 804 (VI)(B)(3), (VI)(C)(2)(a), (VI)(D)(1)(c).)(Defendant's Motion to Dismiss, brief at 9.)

Jones' February 12, 2008 grievance to unit manager Semon constituted the first step in this three-step grievance process. Shortly after Jones submitted this grievance, Unit Manager Semon responded to Jones' complaint in an undated communication. In this response Semon advised Jones that he concluded that correctional staff came to Jones' aid as quickly as they reasonably could, and denied Jones' grievance claims.

(Complaint ¶ 27). Jones then took the second step in the grievance process by appealing this decision to Warden Klopotoski, who also denied his grievance on March 28, 2008. (Complaint ¶ 28.) Jones' complaint then recites that his final appeal to the Office of Inmate Grievances was dismissed by prison officials on May 12, 2008 as untimely. (Complaint ¶ 29.) While acknowledging this fact in his complaint Jones appears to dispute this Department of Corrections finding that his final appeal was untimely, alleging that he did not receive the warden's denial of his grievance until April 17, 2008. (Complaint ¶ 30.)

One year later, on May 11, 2009, Jones filed a *pro se* complaint against five defendants: Correctional Officers Hashagen and Linhart, Unit Manager Semon, Warden Klopotoski, and the prison treating physician, Doctor Dempsey. (Doc. 1) Jones' complaint sought damages and other relief from the defendants in their individual and official capacities, alleging that the prison response to this inmate assault upon him rose to the level of deliberate indifference to the plaintiff's safety in violation of the Eighth Amendment to the United States Constitution. (Doc. 1.)

On August 24, 2009, defendants Hashagen, Semon and Klopotoski filed a motion to dismiss in this case. (Doc. 13.) That motion was briefed by the defendants on September 8, 2009. (Doc. 16.) In this motion, the defendants present three arguments. First, the defendants contend that Jones failed to exhaust administrative remedies, and therefore is barred from pursuing this case in federal court by 42 U.S.C.

§ 1997e. Second, the defendants contend that Jones' complaint should be dismissed to the extent that it seeks damages from state officials in their official capacity. Finally, the defendants assert that Jones' complaint fails to state a valid Eighth Amendment cause of action against Warden Klopotoski.

On September 29, 2009, Jones filed a response to this motion. (Doc. 17). Therefore, the motion is now ripe for resolution by the Court.

Accordingly, upon consideration of this motion, it is recommended as follows:

First, to the extent that Jones seeks damages from state officials acting in their official capacity, the complaint should be **DISMISSED** since the plaintiff is barred from obtaining such relief by constitutional and statutory constraints.

Second, in its current form, the Plaintiff's complaint against Warden Klopotoski fails to state a valid cause of action under the Eighth Amendment and should be **DISMISSED** for failure to state a claim upon which relief can be granted without prejudice to the plaintiff being granted leave to amend his complaint to address the deficiencies identified in this report and recommendation, provided that he does so without undue delay, by amending the complaint within 30 days of the entry of an order adopting this report and recommendation.

Third, with respect to the defendants' motion to dismiss for failure to exhaust administrative remedies, that motion and Jones' response, invite the Court to consider

matters outside the pleadings, a task which falls beyond the reach of a Rule 12 motion to dismiss. Therefore, this aspect of the defendants' motion should be **DENIED** without prejudice to the filing of any appropriate motions for summary judgment on this issue pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II.  Discussion

### A.  Rule 12(b)(6)– The Legal Standard.

Defendants Hashagen, Semon and Klopotoski have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6), which governs motions to dismiss like the motion lodged in this case, provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).    With respect to this benchmark standard for assessing the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently described the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring

> a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, –F.3d–, 2009 WL 2501662, at 7 (3d Cir. August 18, 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983) As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __ U.S.

__, 129 S.Ct. at 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950 .

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim

for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler v. UPMC Shadyside, –F.3d–, 2009 WL 2501662, at 8 (3d Cir. August 18, 2009).

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, in deciding whether exhaustion requirements are met and when examining whether the complaint states a valid cause of action against the various named defendants in their individual and official capacities. Conducting this threshold legal analysis we find that Jones' complaint deficient on a number of grounds and recommend that Jones' claims be dismissed without prejudice to allowing Jones to attempt to timely amend and correct his pleadings.

**B.** **The Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies, and Jones' Response to that Motion, Raise Issues Outside the Pleadings Which May Not be Resolved on the Pleadings Through a Rule 12 Motion to Dismiss**

At the outset, in their motion the defendants allege that Jones defaulted on procedural deadlines in the course of his prior prison grievance proceedings. According to the defendants, Jones did not timely pursue the inmate grievance process provided for by the Department of Corrections, as required by state prison

policies. This procedural default may have substantive significance for Jones since the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) now provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made by Jones grounded in alleged violations of the Eighth Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d. Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some

other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75 -76 (3d Cir. 2000)(citations omitted)

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who

fail to fully complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Bolla v. Strickland, 304 F. App'x. 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x. 178 (3d Cir. 2006); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). This broad rule, however, admits of at least one recognized exception. If the actions of prison officials in some fashion caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d. Cir. 2000)

Defendant's contend that, on its face, Jones' complaint runs afoul of this exhaustion requirement. Citing a passage in Jones' complaint, which states that his final grievance appeal to the Office of Inmate Grievances was dismissed by prison officials on May 12, 2008 as untimely, (Complaint ¶ 29.), the defendants now argue that Jones' procedural default compels dismissal of the complaint for failure to exhaust administrative remedies.

Jones has responded to this exhaustion claim by referring to a cryptic assertion in his complaint which disputed the Department of Corrections finding regarding the untimeliness of his administrative appeal. (Complaint ¶ 30.) In his response to this motion to dismiss Jones further explains that he can show that his final administrative appeal was, in fact, timely, and that prison officials caused his delay in grieving this matter by failing to promptly deliver the warden's response to Jones in March and April of 2008.

In its present posture, the defendants' motion and Jones' response take this Court beyond the pleadings in this case and refer to other factual matters. These facts may be undisputed but they are not before the Court at present, and a Rule 12 motion limits our consideration of the merits of a claim to the pleadings. Since the defendants' motion to dismiss for failure to exhaust administrative remedies, and Jones' response, invite the Court to consider matters outside the pleadings, a task which falls beyond the reach of a Rule 12 motion to dismiss, this aspect of the defendants' motion should be denied at this time without prejudice to the filing of any appropriate motions for summary judgment on this issue pursuant to Rule 56 of the Federal Rules of Civil Procedure.

> **C.** **Jones May Not Maintain An Action For Damages Against the Commonwealth of Pennsylvania, its Agencies or State Officials in Their Official Capacity Under 42 U.S.C. § 1983.**

In addition to these procedural defaults, Jones' complaint also suffers from substantive flaws. For example, in his complaint Jones names prison officials as defendants in both their individual and official capacities, and seeks damages from these officials. (Complaint ¶¶ 8-12 and 31-33.) To the extent that Jones seeks damages from state officials acting in their official capacity, he is barred from obtaining such relief by constitutional and statutory constraints. First, as a matter of constitutional

law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a § 1983 suit brought against an individual acting in his or her official capacity has been deemed to be a suit against the state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). This broad grant of immunity from damages claims in federal court admits of only two exceptions: First, a state can waive its immunity, See Alden v. Maine, 527 U.S. 706, 755 (1999), or, second, Congress can expressly abrogate that state immunity, provided that Congress "both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." Bd. of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001).

With respect to Jones' § 1983 damages claims, it is apparent that Congress has not expressly abrogated this constitutional immunity with respect to federal lawsuits, and the Commonwealth clearly has not waived its immunity. Quite the contrary, the

Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa.C.S.A. §8521(b). While Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, See 42 Pa.C.S.A. §8522, Section 8521(b) flatly states that: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa.C.S.A. §8521(b).

Moreover as a matter of statutory interpretation, Jones cannot rely upon § 1983 to bring a damages action against the state officials in their official capacity since it is well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983. Will v. Michigan Department of State Police, 491 U.S. 58 (1989). Therefore both as a matter of statutory interpretation, and by virtue of the immunity conferred upon the states by the Eleventh Amendment, Jones is forbidden from maintaining this damages action against state officials acting in their official capacity under § 1983. See e.g., Quern v. Jordan, 440 U.S. 332, 342 (1979); Edelman v. Jordan, 415 U.S. 651, 663 (1974). Of course Jones remains free to pursue damages claims against these defendants in their individual, personal capacities, a fact which Jones acknowledges in his response to this motion.

**D.**  **Jones Has Not Stated a Legally Sufficient Cause of Action Against
Defendant Klopotoski**

Finally, our review of this complaint leads us to conclude that, in its current
form, the complaint fails to state a valid cause of action against Warden Klopotoski.
Liberally construed, the complaint names Klopotoski, the Warden at SCI Dallas, as a
defendant. (Complaint ¶ 11.) The complaint then contains a series of factual recitals
regarding an incident in which Jones was injured by a fellow prisoner. (Complaint
¶¶13-25.) This assault forms the basis for Jones' Eighth Amendment claim, yet there
is no reference to Warden Klopotoski in any of these factual averments. Indeed, the
only factual allegation made against the Warden in the entire complaint is that he
denied Jones' administrative grievance some seven weeks after the events which give
rise to this complaint. (Complaint ¶ 28.) Despite the paucity of factual allegations
made against the Warden, Jones asserts, in a conclusory fashion, that "Klopotoski's
failure to take action to curb Inmate Mitchell's pattern of assaults,  known or should
have been known to them, [and] constituted deliberate indifference . . . ." (Complaint
¶ 32.)

Jones facing an exacting burden advancing an Eighth Amendment claim against
Warden Klopotoski, a prison official who is alleged to have violated the constitution
by failing to protect Jones from some risk of injury at the hands of others in the prison.
To sustain such a claim, Jones must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." <u>Id</u>. "Deliberate indifference" is a subjective standard under <u>Farmer</u>-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

<u>Beers-Capitol v. Whetzel</u> 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. <u>See</u> <u>Jones v. Beard</u>, 145 Fed. Appx. 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.). Nor can such an Eighth Amendment claim be premised merely on the fact that Klopotoski was serving as warden when this incident occurred. Quite the contrary, it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), See Jetter v. Beard, 183 F. App'x. 178 (3d Cir. 2008).

Judged against these standards, Jones' complaint fails to state a valid cause of action against Warden Klopotoski in its current form. The complaint contains no factual allegations that would permit a finding that the warden's conduct met the subjective standard for Eighth Amendment claims, deliberate indifference, which requires that the prison official-defendant must actually have known or been aware of an excessive risk to inmate safety. Furthermore, there are no factual recitals relating to the warden which would permit a finding of personal involvement in the alleged wrongdoing. The failure to plead facts relating to the warden's involvement in this conduct is fatal here since individual liability under § 1983 cannot be predicated solely on the principle of respondeat superior.

In an effort to save this claim, in his brief Jones argues facts not set forth in his complaint, suggesting that Inmate Mitchell's institutional history placed the warden personally and subjectively on notice of the dangers that Mitchell presented to fellow prisoners like Jones. The difficulty with this argument is that it is just that: an argument which goes far beyond the well pleaded allegations in the complaint.

In short, without the inclusion of some further well-pleaded factual allegations in the complaint, Jones' claim against Warden Klopotoski appear to be little more than "[t]hreadbare recitals of the elements of a course of action, supported by mere conclusory statements, [which as a legal matter] do not suffice." <u>Ashcroft v. Iqbal</u>, <u>supra</u> 127 S.Ct. at 1979. Therefore the warden is entitled to be dismissed from this action. However, out of an abundance of caution, and in order to allow Jones another opportunity to address these defects, it is recommended that the plaintiff's complaint as to this defendant be dismissed without prejudice at this time and that Jones be afforded leave to amend his pleadings, provided that he acts without undue delay

### III. <u>Recommendation</u>

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** as follows:

1. To the extent that Jones seeks damages from state officials acting in their official capacity, the complaint should be **DISMISSED** since the plaintiff is barred from obtaining such relief by constitutional and statutory constraints. Jones may maintain damages actions against these officials in their individual, personal capacities.

2. In its current form, the Plaintiff's complaint against Warden Klopotoski fails to state a valid cause of action under the Eighth Amendment and should be **DISMISSED** for failure to state a claim upon which relief can be granted without

prejudice to the plaintiff being granted leave to amend his complaint to address the deficiencies identified in this report and recommendation, provided that he does so without undue delay, by amending the complaint within 30 days of the entry of an order adopting this report and recommendation.

3. With respect to the defendants' motion to dismiss for failure to exhaust administrative remedies, that motion and Jones' response, invite the Court to consider matters outside the pleadings, a task which falls beyond the reach of a Rule 12 motion to dismiss. Therefore, this aspect of the defendants' motion should be **DENIED** without prejudice to the filing of any appropriate motions for summary judgment on this issue pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 30th day of September 2009.

_**S/Martin C. Carlson**_
**United States Magistrate Judge**