IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER JONES**, | : | CIVIL ACTION NO. 4:09-CV-0887 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **CO LINDLER & DR. DEMPSEY**, | : | |
| Defendants | : | |

## **MEMORANDUM**

This action arises out of an assault upon pro se plaintiff Christopher Jones suffered while he was incarcerated at the State Correctional Institution at Dallas (SCI-Dallas) . The attack took place on February 5, 2008, perpetrated by another inmate at SCI-Dallas. Jones claims via 42 U.S.C § 1983 that the defendants violated Jones' Eighth Amendment rights through their deliberate indifference: defendant Correctional Officer Lindler (originally incorrectly designated Linhart) by failing to protect Jones from the assault and defendant Dr. William Dempsey by failing to provide adequate medical care following the assault. The complaint, making its claims against Lindler and Dempsey in their official and individual capacities, seeks both compensatory and punitive awards against each of them.

Presently before the court are three motions: Lindler's motion to dismiss or alternatively for summary judgment (Doc. 78); Dempsey's motion to dismiss (Doc. 95); and Dempsey's unopposed motion to strike (Doc. 102) two of Jones' supplemental briefs relating to the defendants' above-mentioned dispositive

motions. For the reasons that follow, both motions to dismiss will be granted and the motion to strike will be denied as moot.

I. **Background**[1]

This case has a lengthy history, with its essential facts repeated many times by the parties, by this court, and by the Third Circuit; they are set forth here with an emphasis on concision and only as necessary for disposition of the pending motions.[2]

On February 5, 2008, while at SCI-Dallas, Jones was outside his cell heading toward the guards' desk when another inmate, Woodrow Mitchell, threw a television set from the top tier of the cell block, which hit Jones on the head and knocked him unconscious. (Doc. 1, ¶¶ 13, 15.) While Jones lay immobile on the floor, Mitchell threw hot water and an "object" at him, injuring him further. (Id. ¶¶ 16–17.) Correctional Officer Lindler, who was on duty that day and "only a few feet away" from Mitchell, did not physically intervene; instead, he ordered Mitchell to return to

---

[1] Following the standard of review for a motion to dismiss under Rule 12(b)(6), the complaint's well-pleaded factual allegations are taken as true. See infra Part II. Although the Federal Rules demand no "detailed" averments of fact in a complaint, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Those portions of the complaint that demonstrate the shortcomings disapproved of in Iqbal are disregarded. See Santiago v. Warminster Twp., 629 F.3d 121, 130–31 (3d Cir. 2010) (applying Iqbal in giving no presumption of truth to mere "conclusions").

[2] The remaining defendants are two of five that the complaint originally named; all claims against the other three defendants have been dismissed. (See Docs. 26, 53, 64, 64-2.)

his cell and close the door. (Id. ¶ 19.) Medical personnel arrived in due course, took Jones to the infirmary for treatment and then sent him to an outside hospital for further treatment. (Id. ¶ 20.) Upon return to SCI-Dallas, Jones remained under the care of Dr. Dempsey. (Id. ¶ 23.)

On February 12, 2008, Jones filled out an official inmate grievance form (Doc. 87, at 13) and directed it to Robin Lucas, the facility grievance coordinator. In italicized, bold-faced print, the grievance form commanded: "***State all relief that you are seeking.***" (Id.) Nonetheless, Jones' complaint included no statement for relief. (Id.)

Lucas assigned unit manager Joseph Semon to respond to Jones' grievance; Semon found the grievance meritless and denied it. (Id. at 11.) Jones appealed the denial, which was upheld March 28, 2008. (Doc. 1, ¶ 28.) On May 12, 2008, Jones' final appeal was dismissed as untimely.

Jones filed his pro se complaint on May 11, 2009. (Doc. 1.) Then-defendants Hashagen, Semon, and Klopotski successfully obtained dismissal of all claims against them (see Docs. 26, 53), which dismissal survived Jones' appeal to the Third Circuit (see Docs. 64, 64-2). This court had "constructively dismiss[ed]" (Doc. 64-2, at 8) the claims against the current defendants essentially on the basis of their never having been served with the complaint. However, the Third Circuit reversed the dismissal as to these two defendants. The Third Circuit held that because Jones was proceeding in forma pauperis, the court and its officers were responsible for

3

effecting service—and "a failure to serve should not prejudice a faultless plaintiff." (Id. at 7–8 (citing 28 U.S.C. § 1915(d).)

Following the Third Circuit's mandate, Lindler and Dempsey were served with notice of the suit against them; they subsequently filed the pending motions (Docs. 78, 95, 102), which are now ripe for adjudication.

## II.  Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests."

Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1947 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 662, 129 S. Ct. at 1949. When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000).

**III.   Discussion**

The two motions to dismiss present, in effect, two primary areas of inquiry: sovereign immunity and procedural default. After a brief discussion of the general

principles behind 42 U.S.C § 1983 and the private right to sue that it grants, the two primary issues will each be discussed in turn.

### A.  Section 1983

Section 1983 creates no substantive rights, but rather provides a remedy for infringement of rights established by other federal laws. See Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002) ("[Section] 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere . . . ."). The statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.A. § 1983 (West 2011). Recovery under § 1983 requires proving that "a person acting under color of state law" deprived the plaintiff of a "right secured by the Constitution and the laws of the United States." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)). In this case, Jones is claiming that he was deprived of his Eighth Amendment rights by state actors.

### B.  Sovereign Immunity

Jones's complaint sets forth its claims against all defendants in their official and individual capacities. The principle of law that bars suits in federal court against states and their subsidiary agencies finds expression in the Constitution itself: "The Judicial power of the United States shall not be construed to extend to

any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 253–54 (3d Cir. 2010) (quoting U.S. CONST. amend. XI). This constitutional limitation on the power of the federal courts has been interpreted to grant immunity from suit to individual state employees sued in their official capacity, since "official-capacity suits generally represent only another way of pleading an action against a state." Id. at 254 (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991) (internal quotation marks omitted).

There is no dispute that Lindler was acting in his official capacity as a state employee during the time of the actions or omissions that Jones described in his complaint. According, Jones' Eighth Amendment claim against Lindler in his official capacity must be dismissed.

Dempsey argues that he cannot be sued in his official capacity because he was neither employed by the state nor the physician who treated Jones at the outside hospital (which apparently was the Community Medical Center in Scranton, Pennsylvania). Dempsey maintains that his being employed by Emergency Services at CMC precludes a finding that he was acting under color of state law.

However, Jones correctly points out in his brief opposing Dempsey's motion that the provision of medical services to prison inmates is traditionally the exclusive prerogative of the state. West v. Atkins, 487 U.S. 42, 54–55 (1988); see also Correctional Institution Medical Services Act, 61 Pa. Cons. Stat. Ann. §§ 3301–07

7

(2009) (requiring provision of medical services to persons incarcerated within Pennsylvania's Correctional Institution system). As the West court observed, "[it] is only those physicians authorized by the State to whom the inmate may turn." West, 487 U.S. at 55. Because the government controls the medical care that its prisoners receive, including any care that prisoners receive at medical facilities not owned or operated by the government, any such medical care remains fairly attributable to the state. See id. at 56 ("[T]he dispositive issue concerns the relationship among the State, the physician, and the prisoner."). See also Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994):

> Regardless of whether the private physician has a contractual duty or simply treats a prisoner without a formal arrangement with the prison, the physician's function within the state system is the same: the state authorizes the physician to provide medical care to the prisoner, and the prisoner has no choice but to accept the treatment offered by the physician.

Id. at 225 (discussing and applying the principles of West).

Accordingly, the undisputed fact that Jones received medical treatment at an outside facility strictly implies that, regardless of who provided treatment or the existence or absence of a contract between the prison system and the service provider, the medical treatment is attributable to the state, and a official-capacity suit by a prisoner against a medical service provider is "only another way of pleading an action against a state." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 54 (3d Cir. 2010) (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991) (internal quotation marks omitted).

The truth of either competing set of facts does not change the inexorable conclusion that Jones' Eighth Amendment claim against Dempsey in his official capacity must be dismissed. Either Dempsey did treat Jones, as Jones claims, in which case sovereign immunity bars the claim; or Dempsey did not treat Jones, in which case Dempsey was not acting under color of state law and is not subject to suit under § 1983.

### C. Procedural default

Having narrowed the claims for discussion to those against Lindler and Dempsey in their individual capacities, the analysis next turns to the matter of procedural default, which Lindler raised in his supporting brief. (Doc. 86, at 10–11.) He notes that Jones failed to include any request for relief in his grievance, despite (1) the bold-faced, italicized statement on the grievance form directing the inmate to do so, and (2) the same mandate appearing in the official grievance policy that was in effect at the time that Jones filed his grievance.[3] Jones does not dispute the

---

[3] See Doc. 86-1, at 7, 7–22 (reproducing the policy governing the inmate grievance system that was in effect at the time that Jones filed the grievance that forms the seed of this civil dispute). The relevant portion of the grievance policy reads: "***If the inmate desires compensation or other legal relief normally available from a court, the inmate shall request the specific relief sought in his/her initial grievance.***" Id. at 11–12.

The current version of the policy is substantially the same. COMMONWEALTH OF PA. DEP'T OF CORR., DC-ADM 804, INMATE GRIEVANCE SYSTEM PROCEDURES MANUAL, SECTION 1—GRIEVANCES & INITIAL REVIEW, pt. A.11 (PDF 7), available at http://www.portal.state.pa.us/portal/server.pt/document/919465/804_inmate_grievances_pdf.

authenticity of the reproduced versions, present in the record, of his 2008 grievance or of the official policy that governed the requirements for filing grievances in 2008.

In filing his grievance, Jones failed to follow the applicable regulations, which required him to specify what relief, if any, he sought. Such failure results in procedural default. See Spruill v. Gillis, 372 F.3d 218, 233–34 (3d Cir. 2004). Dismissal of all remaining claims against both Lindler and Dempsey in their personal capacities is, therefore, appropriate, and no amendment of the complaint could cure the deficiencies in Jones' claims.

## IV. Conclusion

For the above-stated reasons, the court will grant the motions to dismiss filed separately by C.O. Lindler (Doc. 78) and Dr. Dempsey (Doc. 95) and deny as moot C.O. Lindler's motion to strike (Doc. 102). An appropriate order follows.

           S/ Christopher C. Conner  
           CHRISTOPHER C. CONNER  
           United States District Judge

Dated:       March 26, 2012

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER JONES**, | : | CIVIL ACTION NO. 4:09-CV-0887 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **CO LINDLER & DR. DEMPSEY**, | : | |
| Defendants | : | |

## ORDER

AND NOW, this 26th day of March, 2012, upon consideration of the motion to dismiss or alternatively for summary judgment (Doc. 78) filed by C.O. Lindler; the motion to dismiss (Doc. 95) filed by Dr. Dempsey; and the motion to strike (Doc. 102) filed by C.O. Lindler, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motions to dismiss (Docs. 78, 95) are GRANTED.

2. The motion to strike (Doc. 102) is DENIED as moot.

3. The Clerk of Court is directed to CLOSE the case.

4. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge